FREDERICK W. PAUL et al., complainants-respondents,

*v.*

WASHINGTON WILSON et al., executors, &c., defendants-appellants.

[Argued July 6th, 1911.   Decided November 20th, 1911.]

1. A testator, while managing his factory building upon his land, had contracted certain debts for coal, supplied to him by complainants in carrying on his factory business.   By his will he directed the business to be continued after his death under the management of his son, and appointed him, with two others, his executors.   His son, and his executors, continued the business after his death in the factory, and contracted debts for coal furnished the factory by the complainants to carry on the business, and it was *held* that the latter debts (the executors having defaulted in their payment) were under well-settled principles chargeable, in equity, as liens against the land ; but that the debts contracted by the testator for the coal, furnished before his death, in the business, by the complainants, were payable out of the general assets of his estate, for the collection of which the complainants have an adequate remedy at law.

2. The testator's intention, clearly marked throughout his entire will, was, that the net rents received by his trustees from the continuation of his factory business should be set apart by them as a sinking fund, in trust primarily, to discharge his mortgage debts, and that his other, or general debts, should be satisfied out of his personalty in exoneration of the rents of his factory property.

On appeal from a decree of the court of chancery advised by Vice-Chancellor Emery.

*Mr. S. Howell Jones,* for the appellants.

*Mr. Joseph N. Tuttle,* for the respondents.

The opinion of the court was delivered by

VREDENBURGH, J.

The original decree of the chancellor brought up by this appeal was made November 10th, 1910, and adjudged that the de-

fendants forthwith pay to the complainants the sum of $1,626.55, for coal furnished by them for the use of a certain factory building in Newark, New Jersey, called the "Wilson Building," standing upon premises (described in the bill of complaint) which had been owned by the defendants' testator, Edward Wilson, deceased.

The defendants having failed to pay the sum so decreed to be paid by them, a decretal order was signed on February 16th, 1911, by the chancellor, pursuant to leave reserved on the foot of the decree, adjudging that sum to be a lien and charge upon the premises described in the bill of complaint, and that the same be sold to satisfy unto the complainants the said amount of money, together with interest, costs and counsel fee. From this decretal order of February 16th, 1911, the defendants have appealed upon grounds specified in their petition of appeal, to the effect that the said total sum of $1,628.55 was not chargeable upon, and should not have been decreed to be a lien upon said lands; and upon further grounds to the effect that the sum of $488.40, portion of said total sum, was a debt contracted by the testator during his lifetime, and was a general debt of the deceased testator, to be paid out of his estate by his executors in the same way as any other of his contract debts.

The learned vice-chancellor, who advised this decree and decretal order, expressed himself in his memorandum filed in the cause, as governed by the decision of the court of chancery in *Ferry* v. *Laïble,* reported in *31 N. J. Eq. (4 Stew.) 566,* and on appeal to this court in *32 N. J. Eq. (5 Stew.) 791.* He was of the opinion that the complainants' right; as creditors, to resort to the land invested in the business, by the direction of the testator's will for the payment of debts created in the business, was established by the decision he cited.

We concur with the view expressed by the vice-chancellor, and with his conclusion, that the bills for coal furnished by the complainants for the carrying on of the business in the Wilson Building, to the extent the coal was contracted for and furnished *after* testator's death, should be imposed as a lien on the premises; but differ with his conclusion so far forth as he held that the bill for coal furnished by the complainants *before* testator's death, for the

carrying on of said business, and which had been contracted by testator *before* his death (amounting to $488.40), was properly chargeable in equity as a lien against the premises.

The decision of the court of chancery, to which he refers (to the extent it was affirmed by this court), held, that where a testator directs his executors to continue his business after his death, and *they* incur debts in its prosecution, that then, so much of his assets as he has directed should be embarked in the business after his death, will stand charged in equity for the payment of the debts of the business.

On the appeal of this case to this court, it was also here determined that such executors carrying on testator's business after his decease, are personally liable for the debts so contracted, and that trade creditors have, for reasons expressed in the opinion, an equitable right to resort to the property engaged in such business, for the payment of their claims arising out of it, if their remedy against the executors be unavailing. It should not escape notice that in the opinion of this court in that case it was declared that the inability of the executors to personally meet the complainants' claim must appear by the evidence (if not conceded by the parties) before resort could be had to the property embarked in the business. In the case now before us there is no direct averment of the insolvency of the executors, individually, made in the bill, nor is such insolvency disclosed in the evidence taken at the hearing before the vice-chancellor. The testator's estate was not declared insolvent by the executors, and there is in the case no allegation, or suggestion even, of any special reason for the interference of equity, in order to compel payment of testator's general debts. It must therefore be assumed that the complainants' remedy at law is adequate so far as the collection of the general debts of the testator out of his estate is concerned, and no reason is perceived why the complainants should not have taken the ordinary course of procedure required for the collection of the debt of $488.40, contracted by the testator before his death, out of the general assets of his estate. *Rutherford* v. *Alyea, 54 N. J. Eq. (9 Dick.) 411; Loehnberg* v. *Loehnberg, 63 N. J. Eq. (18 Dick.) 496.*

There are other considerations which lead us to the conclusion

that the decree, to the extent that it charges the $488.40 item to be a lien upon the land, is erroneous.

The will discloses no testamentary intention that any other than the "current" expenses of the posthumous management of the testator's property in the business in question should be incurred by the executors. The only clause of the will having an important bearing upon this subject is the seventh. By that the testator orders and directs that his real estate, known as the Wilson Building, with all the buildings, engines, machines and other appurtenances shall be continued under the management of his son, Washington Wilson (one of the executors), who shall receive out of the rents $2,000 per year, as compensation for his services as manager, to be charged as a *current* expense of the property, and he adds:

"I direct that my trustees after providing out of the rents of said works for the proper maintenance and repair of the property and for taxes. insurance, compensation of manager aforesaid, and other *current* expenses, shall first apply the net rents to the payment of the interest on all the *mortgages* which may be outstanding on my property at the time of my decease, whether in Newark, N. J., or elsewhere, and secondly, two-thirds of the residue of said net rents shall be paid to my wife during her life so long as she shall remain unmarried, but not exceeding $3,000, in any one year, and the remainder shall be set apart annually as a sinking fund and applied when deemed proper, to discharge the *principal* of *mortgages* made by me upon lands and buildings whereof I shall die seized, wherever situate, in England or America."

A will speaks only from and after death, and the property thus devoted by the testator to the indicated business, was not certainly intended by him to be burdened with any expense, other than the *current* or *running* expense of the management, *to be* incurred *after* testator's death; nor to expenses incurred by him in its *prior* management. He refrains from any allusion here either to his general debts or to those contracted by him in the business while under his own management. As to these he had, by the very first clause of his will, expressly directed that his debts should be paid out of his personal estate, and I quote its words, viz.:

"*First.* I direct my debts to be paid out of my personal estate, as soon as practicable after my decease, *except* my debts secured by *mortgages*

made by me upon my real estate which I direct my executors to pay out of the income of my estate in manner hereinafter specified."

He expressly distinguishes, by the above clauses, and a subsequent clause of his will (to be referred to hereafter), his *mortgage* debts from his *other* debts; the former he intends shall be paid from the rents of his property devoted to the specified business, while the latter he intends shall be satisfied from his personalty alone. The legal maxims, *"Expressio unius est exclusio alterius"* and *"Expressum facit cessare tacitum,"* apply pointedly here. To burden the rents of the Newark property with the payment of the testator's general debts would, it seems to me, be flying in the very teeth of his expressed intention, and a court of equity would properly refuse to entertain such a claim unless it appeared there were no other assets or property of testator from which such debts could be satisfied.

Again, to impose upon the Newark property, especially the burden of paying testator's general debts, would result to the prejudice of the interests of testator's two daughters, who are residuary legatees under the sixteenth and ninth clauses of his will, and are not parties to the suit. The latter clause reads:

*"Ninth.* And if there be any income remaining after the satisfaction of all my *mortgages,* and of the annuity of $4,000 per year, to my wife, my executors and trustees shall divide the residue, if any, equally between my two daughters, Johannah (Joy) Wallace and Christian May Loveland, to each one-half payable quarterly, until the death or remarriage of my wife."

It seems unnecessary to extend this opinion farther upon these lines. The result is that the decree should be reversed for the purpose of modification so as to conform to the views above indicated.

*For affirmance*—SWAYZE, BERGEN, BOGERT—3.

*For reversal*—THE CHIEF-JUSTICE, GARRISON, PARKER, VOORHEES, KALISCH, VREDENBURGH, CONGDON, WHITE—8.